## CIRCUIT COURT OF LOUDOUN COUNTY

Belfort Furniture, Inc.

v.

William J. Stewart,
d/b/a Stewart
Development Group

Case No. (Law) 29422

BY JUDGE THOMAS D. HORNE

June 8, 2004

On November 21, 2002, Belfort Furniture, Inc., filed a warrant in debt in the General District Court of Loudoun County against William J. Stewart, d/b/a Stewart Development Group. The amount sued for is $2725.13 with interest at 18% from invoice date, costs, and reasonable attorney's fees. The judge, Judge Cannon, of the General District Court ordered that the plaintiff furnish a bill of particulars by March 12, 2003, and that the defendant respond by way of Grounds of Defense by April 11, 2003. A trial was conducted in the general district court on May 14, 2003, and judgment was rendered. Defendant timely noted an appeal of that judgment to this Court and posted bond to secure such appeal.

By praecipe, the case was brought before this Court for scheduling on January 12, 2004. On that date, a trial without a jury was set for May 14, 2004, commencing at 1:00 p.m. The plaintiff, by its attorney, and the defendant, *pro se*, appeared on the scheduled trial date. At that time, correspondence was tendered to the Court concerning a settlement. If

462

approved, the settlement would have called for a dismissal of this case with prejudice.

Mr. Stewart represented that his attorney had no authority to agree to a dismissal of this case in accordance with the terms contained in the letter. Over plaintiff's objection, the Court denied the motion to dismiss the case with prejudice as settled. Absent express authority from his client, an attorney may not agree to a *retraxit* or termination of a case on the merits. *Concrete Company v. Board of Supervisors*, 197 Va. 821 (1956). Lacking such evidence of authority, the motion to dismiss was denied and the case rescheduled for a trial on the merits. The defendant requested that a jury be impaneled. A trial date was established for June 15, 2004, commencing at 9:00 a.m. It was provided in the scheduling order that either party might, by praecipe, bring the case before the Court on the next ensuing Motions Day, June 4, 2004, at 2:00 p.m. on a motion for summary relief. Discovery was to be completed by June 4, 2004.

On June 4, 2004, at 2:00 p.m., counsel for the plaintiff appeared, pursuant to his praecipe, prepared to argue a motion for summary judgment. The defendant did not appear. Whereupon, the Court heard the arguments of counsel for the plaintiff, received the exhibits in support of the motion, and took the matter under advisement.

### Nature of the Controversy

The Bill of Particulars and Grounds of Defense establish the following controversy between the parties. Plaintiff asserts that on or about April 13, 2002, Mr. Stewart purchased from it various pieces of furniture. These items of furniture, it is alleged, were delivered to the defendant on or about June 27, 2002. Subsequent to the delivery of the furniture, plaintiff contends that it was paid $130.33 of the total amount due for the furniture, leaving an outstanding balance of $2,725.13. It is this invoiced amount that it asserts is due and owing from Mr. Stewart. The invoice terms include reasonable attorney's fees necessitated by collection and interest at 18% on amounts not paid on delivery of the furniture.

Defendant contends that the transfer of the furniture on April 13, 2002, was not a purchase but an exchange arising out of an earlier purchase of allegedly defective furniture in January 2001. He contends that both the sales order and delivery slip in connection with the June 27, 2002, delivery reflect that he was to be given a credit for money paid in connection with the January 2001 purchase of defective furniture. Between the time of the April 13, 2002, furniture purchase and the June 27, 2002, delivery, Mr. Stewart

alleges that he contacted various employees of Belfort to negotiate a "salvage value" for the allegedly defective furniture acquired in January 2001. Following those discussions, the defendant elected to pay $130.33 representing what he believed to be the difference between the cost of the defective furniture purchased in January 2001 and the later purchase delivered in June 2002. With this payment, defendant asserts that the plaintiff was paid in full and that he is not liable for the amount sued for.

Mr. Stewart makes reference in his pleadings to an allegedly unauthorized charge by Belfort against his credit card for the amount of $2,725.13 made on June 28, 2002. Subsequently, Belfort purportedly acknowledged the improper charge and caused his credit card account to be credited with the amount improperly debited in connection with the purchase. In connection with his discussions with Belfort officials over the credit card charge, it is the contention of the defendant that he was instructed to work out the "salvage value" of the allegedly defective furniture. It is asserted by the defendant that no agreement was reached as to a value of the furniture retained from the January 2001 purchase and that the plaintiff should either negotiate a value or retrieve the furniture.

In connection with the instant Motion for Summary Judgment, the plaintiff propounded requests for admissions. These were mailed to the defendant on May 20, 2004. The defendant's response was mailed on May 25, 2004. While the responses to the request for admissions simplify the authentication of the various invoices and delivery slips, they do not make the claim for damages ripe for adjudication by the Court. The issue of the disposition of the allegedly defective furniture purchased in January 2001 and the amount, if any, that was intended to be credited from that purchased against the furniture delivered on June 27, 2002, cannot be resolved on summary judgment. The letters included with the motion, while of evidentiary value, do not warrant summary relief. There remain issues genuinely in dispute to be determined by the jury. Va. Code Ann. § 8.01-377.1; Va. Sup. Ct. R. 3:18. Accordingly, the motion for summary judgment is denied.

### Suggestion of Recusal

Defendant has filed with the Court, among other things, a paper that is untitled and dated June 3, 2004. While not so identified, it would appear to be a motion for disqualification. This paper is signed by the defendant. It asks certain questions of the Court. They are the questions of one who would wish to question the propriety of a certain judge hearing a particular case.

Central to the issue raised by the defendant is the trial judge's impartiality or appearance of impartiality in the handling of this particular case. The test for the appearance of partiality is an objective one. This test has been described in the following terms: "whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." Shaman, Lubert, Alfini, *Judicial Conduct and Ethics* 139, (3rd ed. 2000).

A judge in the Commonwealth of Virginia is required to, "respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Pt. 6, § III, Canon 2, Va. Rules.

Defendant suggests that, because counsel for the plaintiff is a member of the Senate of Virginia or because of the relationship of the undersigned with other members of the judiciary, that there exists an appearance of impropriety warranting judicial review. Counsel for the plaintiff and the judges of the District Court do not share intimate social or economic interests with the undersigned. The undersigned was appointed to the Circuit Court in 1982, long before plaintiff's counsel became a member of the General Assembly. While the counsel for the plaintiff has supported the reappointment of the undersigned to the Circuit Court and in his unsuccessful bid to the Supreme Court of Virginia, so also did all of the members of the Loudoun County Bar Association. One of the judges, Judge Cannon, of the District Court, supported the candidacy of the undersigned for Commonwealth's Attorney in 1979. So also did a majority of the voters in Loudoun County.

Another of the District Court Judges, Judge Worcester, and the undersigned have been members of the Leesburg Rotary Club since 1982. Rotary is an international service organization that promotes "service above self" and has as talismans truth, societal benefit, and international good will. Counsel for the plaintiff, the two General District Court judges and the undersigned are members of the Loudoun County Bar Association, Virginia State Bar, and probably a host of other organizations dedicated to furthering the rule of law.

The General District Court judges, while in the practice of law, and the counsel for the plaintiff have all appeared as counsel in cases before the undersigned during the more than twenty years the undersigned has been on the bench. Some of their clients have prevailed in the pursuit of their claims and some have not. The undersigned earns approximately $125,000.00 per year, as does every other circuit court judge in the Commonwealth of Virginia. Neither the counsel for the plaintiff nor any of the two judges is a party to this case.

This Court has the utmost respect for the professional abilities and integrity of the two judges and counsel for the plaintiff. This does not mean that my respect for their professionalism would result in an abdication of my responsibility to ensure that justice is done for all involved in this lawsuit. They are not parties to this suit. Plaintiff's counsel is an advocate for his client. Advocacy does not involve personal interest. Lawyers are trained to not become personally involved in their client's cases and to lose objectivity in the process. Because lawyers, in their professional capacity, pursue a course of conduct mandated by a unique and highly regulated code of behavior, they need not be sent on a constant Diogenian search into legal limbo for someone new to hear their case. Respect for adversarial abilities does not equate to agreement with the positions they take on behalf of their clients. The professionals alluded to and others like them would expect no less of the undersigned than to accord all who appear before the Court the utmost respect and an unbiased ear.

Counsel for the plaintiff has not asked for recusal. The undersigned has no relationship, financial or otherwise, with either the plaintiff or defendant. There is absent any evidence that would suggest to an objective, disinterested observer that justice could not be done by the trial of this case with a jury on the date set for hearing.

The suggestion of recusal is denied.

## Sanctions

In his paper dated June 3, 2004, the defendant makes the following assertion:

> [t]here is money that is owed me for nearly a year now from Loudon [sic] County that perhaps you, Ms. Cannon, Mr. Muse, Ms. Waddell or someone there can resolve. I have made several attempts resolve [sic] this at [sic] clerical windows at your location and by phone to no avail. The matter is a simple math issue, but as acknowledged by Ms. Cannon in her May 16, 2003, correspondence (see attachment 2), "miscalculation" is not uncommon with your group there in Loudon [sic]. The net of the matter (and I will give your group one more chance to figure it out on your own) is that Loudon [sic] County owes me $172 plus 1.5% monthly interest for one year for the civil appeal bond over payment I sent to Ms. Cannon on June 9, 2003 (see attachment 3). Again on this one, *I know I am right so please spare yourselves any further public embarrassment on this one by*

*forwarding a check for the appropriate amount to me no later than Tuesday, June 8, 2004.*

(Emphasis added.)

This pleading suggests that the undersigned (to whom the letter is addressed) should send a check to the defendant by a date certain for the purpose of sparing public shame. Existing law or a good faith argument for the extension, modification, or reversal of existing law does not warrant such an allegation. If the defendant wished to have the Court review the bond, he may have requested a hearing at which the parties might present evidence on the issue. Va. Code Ann. §§ 16.1-106 et seq. In no event would the judge be required upon the demand of the appellant to pay over a certain amount by a date certain. Such a demand finds no basis in law or in everyday concepts of due process.

This concept is so elemental as to be obvious not only to persons trained in the law but also to *pro se* litigants who would avail themselves of the adversarial process. To permit such pleading to go unsanctioned is contrary to the spirit and the letter of Va. Code Ann. § 8.01-271.1. That section provides in pertinent part that:

> [t]he signature of an attorney *or party* constitutes a certification by him that (i) he has read the pleading, motion, or *other paper*, (ii) to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. ... If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction.

*Id.* (emphasis added).

The reference portion of the paper would appear to be nothing more than an extension of the *ad hominem* tenor of the remaining portions of the paper. The imposition of the sanction will follow the trial in this case.

The case is continued to the date set for trial. Attached to this Memorandum Opinion and Order are various possible jury instructions that the Court may give. Should you have others, the parties should come prepared with those on the date of trial.

June 17, 2004

*Final Judgment Order*

This day came the parties in person, and came the plaintiff by counsel, and the defendant *pro se*. The defendant, having heretofore filed his grounds of defense herein, issue was joined.

Whereupon came a jury, to wit: Lance L. Adams, Lewis J. Cassidy, Bernadette A. Light, Nancy L. Otto, and Saw A. Pe, who were sworn to well and truly try the issues joined and a true verdict give according to the evidence and the law.

The evidence of the plaintiff was presented, and, at the conclusion thereof, the evidence of the defendant was presented.

After receiving instructions from the Court and hearing arguments of plaintiff counsel, the jury retired to their room to consult of their verdict and, after some time, returned into court with the following verdict:

> We, the jury, on the issue joined, find in favor of the plaintiff, Belfort Furniture, Inc., and against defendant, William J. Stewart, and fix its damages at $2725.13. /s/ Lance L. Adams, Foreman.

It is therefore adjudged and ordered that the plaintiff recover and have judgment against the defendant in the amount of $2725.13, to be awarded from the cash bond of $4,934.00 ($5,000.00 tendered minus $66.00 in listed fees and services) posted by the defendant via mail and received and processed by the Clerk of Court on June 16, 2003. The balance of the cash bond is to be returned to the defendant.

*Sanction of Pro Se Defendant William J. Stewart*

In his paper dated June 3, 2004, addressed to the undersigned, the defendant makes the following assertion:

> The net of the matter (and I will give your group one more chance to figure it out on your own) is that Loudon [sic] County owes me $172 plus 1.5% monthly interest for one year for the civil appeal bond over payment I sent to Ms. Cannon on June 9, 2003 (see attachment 3). *Again on this one, I know I am right so please spare yourselves any further public embarrassment on this one by*

*forwarding a check for the appropriate amount to me no later than Tuesday, June 8, 2004.*

(Emphasis added.)

The defendant threatened public shame to the undersigned specifically, and the Loudoun County judicial system in general, if $172 of his appeal bond was not returned to him by a date certain. The defendant alleged in his letter that the amount of the bond was incorrectly calculated by the aforementioned amount.

While a defendant has every right to request review of an allegedly incorrect appeal bond, he must do so through the proper channels. It should be clear even to a *pro se* litigant that those proper channels do not include threatening letters addressed to the judge hearing the case. If the defendant wished to have the Court review the bond, he may have requested a hearing at which the parties might present evidence on the issue. Va. Code Ann. §§ 16.1-106 et seq. If one chooses to represent himself, he must educate himself on proper procedures in every aspect of litigating his case. The procedures of a court of law must not be ignored nor disrespected.

Va. Code Ann. § 8.01-271.1 states "[t]he signature of an attorney or *party* constitutes a certificate by him that (i) he has read the pleading, motion, or *other paper* ... and (iii) it is not interposed for any *improper purpose*, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (Emphasis added.) This section continues "[i]f a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction. . . ."

The Court respects the efforts of any *pro se* litigant who chooses to avail himself of the adversarial process. However, it strongly advises the defendant that, if he chooses to represent himself in the future, in this court or any other, he be mindful of everyday concepts of appropriate communication and procedures as outlined by the Virginia Code. In consequence, this Court hereby sanctions the defendant, William J. Stewart, by means of reprimand from the Court for the impropriety of his letter sent to threaten the undersigned and the Loudoun County judicial system.

The parties may appear before the Clerk and endorse this order within five days. Otherwise, pursuant to Rule 1:13, the Court will consider endorsements waived. This order is final.